# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 06-61593 |
| RALPH EDWARD HALEY and SUSAN COOPER HALEY, Debtors. | CHAPTER 7 |
| | JUDGE RUSS KENDIG |
| | ADV. NO. 06-06214 |
| THE RICHLAND TRUST COMPANY, Plaintiff, | |
| v. | |
| RALPH EDWARD HALEY et al., Defendants. | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |

Now before the court are cross-motions for summary judgment filed by Plaintiff The Richland Trust Company ("Richland") and Defendants Ralph Edward Haley and Susan Edward Haley, on Richland's complaint objecting to a discharge of a debt and objecting to the grant of a discharge. Defendants filed their motion on July 2, 2007 under Fed. R. Bank. P. 7056, which incorporates Fed. R. Civ. P. 56. Plaintiff filed its motion on July 17, 2007. Defendants filed a response to Plaintiff's motion on August 1, 2007. On August 24, 2007, Plaintiff filed a response to Defendants' motion which containing a brief stipulation as to damages, eliminating the issue of damages as one of material fact in this case.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(O). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND AND PROCEDURAL POSTURE

On April 24, 2003, Ralph Haley gave Richland a security interest on a 1986 Hitchhiker concession trailer in exchange for a commercial loan of $37,000. The value of the Hitchhiker was designated as $25,000; the balance of the loan was secured by other collateral. Richland perfected its security interest with a properly filed UCC financing statement.

On June 1, 2004, in violation of the loan agreement, Ralph Haley sold the 1986 Hitchhiker to an unknown third party, without notice to Richland. No physical records of this transaction have been submitted into evidence. The parties have since stipulated that the selling price was $7,000.00. The buyer cannot be found. Ralph Haley then bought another, newer, concession trailer, a 2002 Timberwolf.

On July 14, 2006, Ralph Haley and Barbara Miller, the latter a commercial lender and assistant vice president with Richland, signed an "Agreement to Exchange Collateral" ("Exchange Agreement"). The agreement was intended to replace the perfected lien on the unavailable Hitchhiker with a new perfected lien on the Timber Wolf. The Timber Wolf was then to be sold at a private sale and the proceeds applied to Defendants' loan balance.

On August 28, 2006, Debtors filed a voluntary Chapter 7 petition. Shortly thereafter, the Trustee demanded that Richland turn over the Timber Wolf trailer, claiming the lien a preferential transfer. Richland turned over the trailer, and the Trustee sold it.

On December 20, 2006, Richland filed this adversary case, arguing that Debtors' obligation to Richland should be excepted from discharge because of willful and malicious injury to the bank's interest in Debtors' property; that Defendants' debt should be excepted from discharge because of actual fraud; or that Debtors' discharge should be denied because of failure to keep or preserve recorded information from which the debtor's business transactions might be ascertained. On July 2, 2007, Defendants filed a motion for summary judgment on the basis of the argument that the Exchange Agreement contained an immediately operative release of the bank's claims against Defendants for their violation of the loan agreement. Plaintiff filed a motion for summary judgment on July 17, 2007 on the issue of willful and malicious injury to Plaintiff's property. Defendants responded on August 1, 2007, arguing that issues of material fact still existed with respect to Plaintiff's claim of willful and malicious injury, and reiterating their earlier claim that Plaintiff had released the claims it might have had against Defendants for their violation of the loan agreement.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II. Plaintiff's Primary Claim: Willful and Malicious Injury under § 523(a)(6)

Plaintiff's Complaint invoked four provisions of the Bankruptcy Code, arguing that Defendants' obligation from be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) (false pretenses, false representation, or actual fraud) or § 523(a)(6) (willful and malicious injury), or that Defendants should be denied a discharge under § 727(a)(3) (failure to keep records) or § 727(a)(4)(D) (withholding information from an officer of the estate). In Plaintiff's Motion for Summary Judgment, however, Plaintiff has briefed only the second issue, arguing that Defendants should be denied a discharge under § 523(a)(6) because of their conversion of the 1986 Hitchhiker trailer. The court considers this latter claim in this section. Because of the court's resolution of the defendant's affirmative defense (release), and because the other two theories have not been briefed beyond the initial complaint, the court reserves discussion of those claims until Part IV, after the discussion of Defendants' affirmative defense in Part III.

The Bankruptcy Code provides that discharges under 11 U.S.C. § 727 do not discharge individual debtors for discharges "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court has noted that the "willful and malicious injury" language naturally evokes the category of intentional torts in the lawyer's mind. Kawaauhau v. Geiger, 118 S.Ct. 974, 977, 523 U.S. 57, 61 (1998), and that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Id. The Sixth Circuit applied the Geiger decision in this circuit in Markowitz v. Campbell (In re Markowitz), 190 F.3d 455 (6th Cir. 1999), announcing the new and current rule that "unless 'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." Id. at 464. In the process, the Sixth Circuit also expressly overturned the pre-Geiger rule of Perkins v. Scharffe, 817 F.2d 392 (6th Cir. 1987) (holding that the willful and malicious injury standard is satisfied when one intends the act regardless of whether he intends the consequence). Following Markowitz, the Sixth Circuit likewise reaffirmed that "only acts done with the intent to cause injury–and not merely acts done intentionally–rise to the level of willful and malicious injury for purposes of satisfying § 523(a)(6)." Kennedy v. Mustaine (In re Kennedy), 249 F.3d 576, 581 (6th Cir. 2001).

Critically for this case, despite the Supreme Court's observation that the language of

§ 543(a)(6) calls to mind intentional torts, there is a small zone of incongruity between the requisite intent for the intentional tort of conversion under Ohio law and the standard for "willful and malicious" injury as announced by the court in that case, as well as by the Sixth Circuit in its subsequent cases. Conversion, under Ohio law, is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp., 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 175 (1990). However, "intent or purpose to do a wrong is not necessary element of proof to establish conversion," Fulks v. Fulks, 95 Ohio App. 515, 518, 121 N.E.2d 180 (1953), and "the motive by which a party was controlled in the conversion of property is of no avail as a defense." Id. at 519. Therefore, while the facts as stipulated by the parties strongly suggest that Defendants did in fact convert the concession trailer under Ohio law, that does not end the court's inquiry. The Geiger court stated it thus: "not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts ... do not suffice to establish that a resulting injury is willful and malicious." Id. at 63-64. On the facts as stipulated thus far, Ralph Haley intended the act of selling the trailer, but there is insufficient evidence to hold that he intended the consequence of which Richland complains (injury to the bank's interest as a creditor).

Accordingly, even discounting the following analysis of Defendant's claim, summary judgment on the issue of willful and malicious injury would be inappropriate at this juncture.

### III. Defendant's Claim: Release

The above discussion of Plaintiff's § 523(a)(6) claim is largely academic at this stage, however, because Defendant has established a prima facie case of release and Plaintiff has failed to raise any argument or allege any evidence satisfactory to rebut it.

Under Federal Rule of Civil Procedure 8(c), release is an affirmative defense which a party must set forth affirmatively in a responsive pleading. The court notes that Defendant did not raise the issue of release in its Answer by name. The Answer "affirmatively states that any damages allegedly suffered by the plaintiff was [sic] due to errors and omissions of the plaintiff itself and not due to any action of the defendants" (Answer 1), which is insufficiently specific to be considered to have raised the release issue there. However, although Haley did not raise the issue before his motion for summary judgment, the court does not believe this is fatal. "Failure to raise an affirmative defense by responsive pleading does not always result in waiver." Smith v. Sushka, 117 F.3d 965, 969 (6th Cir. 1997); see also Moore, Owen, Thomas & Co v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993). The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to respond. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). The Sixth Circuit has also cited approvingly the rule of Lucas v. United States, 807 F.2d 414 (5th Cir. 1986), that "the defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond" (internal quotations and brackets omitted). Moore at 1445. Haley has since raised the affirmative defense of release without objection in two dispositive motions to which Plaintiff had ample opportunity to file responses and did in fact

file responses. Plaintiff cannot claim unfair surprise at the defense.

The release in question was part of the Exchange Agreement prepared by Richland's attorney and signed by both parties. In numbered paragraph 4, the Exchange Agreement states: "Lender releases any claim it might otherwise be allowed to make that Debtor violated the loan agreement by selling the First Trailer" (the 1986 Hitchhiker). (Defs.' Ex. A.)

The only argument against enforcement of this clause that Richland has raised was contained in the statement of fact in their Motion for Summary Judgment, filed subsequently to Defendant's Motion for Summary Judgment. Plaintiff argues that "[t]he Debtors did not perform their part of the settlement agreement because the trustee's powers as a super-creditor prevented them from doing so. Because the intervention of bankruptcy caused the debtors' failure to perform the settlement agreement, the bank continues to assert its right as holder of a valid perfected security interest in its wrongfully converted collateral, the 1986 Hitchhiker Trailer." (Pl.'s Mot. for Summ. J. 3.)

This argument is inapposite. The language of the release clause is presently operative, unqualified, and unconditional. This stands in contrast to other provisions of the agreement that are expressed in conditional or future-tense language, such as numbered paragraph 3: "... Lender should record a lien on The Replacement Trailer and verifying that there are no prior liens thereon, Lender will release its lien on The First Trailer." The Exchange Agreement thus did not automatically release the lien itself the way it did Plaintiff's claims against Debtors for their violation of the loan agreement. The lien and the loan agreement are conceptually distinct. While it may be, therefore, that Plaintiff can still enforce its lien against the First Trailer, should it be found, it does not follow that this negates the unconditional release of the bank's claims against Debtors individually for violating the loan agreement, contained in numbered paragraph 4. Because the argument Plaintiff has advanced under § 523(a)(6) flows from Debtors' sale of the collateral, the release operates directly on point.

The court notes that the release was limited in scope to claims that Plaintiff "might otherwise be allowed to make that Debtor violated the loan agreement by selling the First Trailer," and is therefore not a release on the note itself, only a release on those claims flowing from Debtors' sale of the collateral, not any other transaction or occurrence. Richland's claim as an unsecured creditor on the underlying note, filed with this court on March 7, 2007, well after the commencement of this adversary proceeding, is not barred by this release. The release does, however, bar Plaintiff's argument that Debtors' sale of the 1988 Hitchhiker warrants excluding from discharge the underlying obligation secured by the bank's lien on that trailer.

## IV. Plaintiff's Other Claims

In its Complaint, Plaintiff advances three additional theories upon which Debtors should have their obligation to Plaintiff excepted from discharge, or should be denied a discharge. These latter issues have been briefed by neither Plaintiff nor Defendants. However, the court finds that its above discussion nevertheless resolves at least the first of

them–the argument that Debtors' obligation to Richland should be excepted from discharge for actual fraud. Plaintiff's remaining two arguments that Debtors should be denied a discharge for failure to keep records or for withholding information from the Trustee, however, cannot be disposed of by the court's analysis of the release in the Exchange Agreement. Therefore, this argument remains untouched by this decision and summary judgment for both parties on this issue will be denied.

## A. Debts for Benefits Obtained by Actual Fraud: § 523(a)(2)(A)

Plaintiff argues that Debtors' obligation to Richland should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), which provides:

> (a) A discharge ... does not discharge an individual debtor from any debt (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

The only allegedly fraudulent action of the Debtors, however, according to the Plaintiff's Complaint, involved the selling of the trailer: "Debtors incurred said debt by actual fraud, to wit: the debt was incurred by selling a [1986 Hitchhiker] concession trailer as if it was free and clear of liens when the debtor knew it was subject to this bank's valid perfected security interest." (Complaint 2.) The release signed by the parties operates directly on this claim. Plaintiff has already released Defendants for claims that it violated the loan agreement by selling the First Trailer. In addition, Plaintiff has failed to parse the Code's language in § 523(a)(2)(A). Defendants are not alleged to have incurred the debt itself via actual fraud. Plaintiffs have only alleged that Defendants effectively defrauded the now-unavailable buyer of the Hitchhiker by representing that there were no liens on the trailer when there was one; they have not alleged actual fraud in incurring debt (to the bank or any other actor). The debt transaction and the sale transaction are separable. No allegations of fraud in incurring the debt on which Richland seeks to collect (Claim 7) have been brought.

## B. Denial of Discharge for Failure to Keep Records: § 727(a)(3)

Plaintiff's third and fourth issues, however, cannot be held to have been directly affected by the release because they arise from actions (or failures to act) that are not "violations of the loan agreement," which is the limit of the scope of the release. Plaintiff's third issue is that Debtors should be denied a discharge under § 727(a)(3), which provides that the court shall not grant a discharge if

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The obligation to keep records of business transactions exists independently of the loan agreement, and therefore the release for violations of the loan agreement does not effect a release of Plaintiff's ability to sue for a denial of discharge under § 727(a)(3).

The court notes that the provision for denying debtors a discharge under § 727(a)(3) is invoked sparingly. It is true that the denial for failure to preserve records does not require intent to defraud a creditor. Compare 11 U.S.C. § 727(a)(2) (requiring that claimant show that debtor had "intent to hinder, delay, or defraud a creditor or an officer of the estate") with 11 U.S.C. § 727(a)(3) (no comparable requirement); see also Dolin v. Northern Petrochemical Co., 799 F.2d 251 (6th Cir. 1986) (because denial of discharge under § 727(a)(3) applied, there was no need for appellate court to inquire into whether defendant had the necessary intent to defraud creditors under § 727(a)(2)). However, it is also true that the mere ability of a complainant to prove that a specific record was not kept does not warrant a denial of a discharge in its entirety, one of the harshest sanctions under the Code. "Section 727(a)(3) requires the debtor to provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." In re Strbac, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999) (internal quotations omitted). In addition, the court must test the adequacy of the debtor's records on a case by case basis, taking into consideration the "debtor's occupation, financial structure, education, experience, sophistication, and any other circumstances that should be considered in the interest of justice. Id. (internal quotations omitted). As a matter of experience, though not of necessity, "financial structure," along with the sheer volume of missing information, have proven to be the most weighty of these factors; § 727(a)(3) has generally been invoked to attack the discharges of debtors who had complex financial affairs of which they could produce little or no account. For example, in Strbac, the bankruptcy appellate panel upheld a denial of discharge of a debtor who operated an unincorporated business for which he had "no records of his wages or his expenses, no income tax returns, and no document to show what his 'in kind' exchanges were or how they were handled ... [t]here is not one piece of paper offered by Debtor relating to his financial activities." Id. at 884. In Dolin, the court upheld a denial of a discharge under § 727(a)(3) when a debtor withdrew more than $500,000 over three years from two corporations of which he was the sole shareholder by writing checks to himself or for cash on company bank accounts, in order to support compulsive gambling and drug habits. No records of the transactions were available. Likewise, Dolin claimed that he intended to repay the two corporations, but could produce neither loan agreements nor statements accounting for how much he owed at the time to each of them.

The parties in the instant action have already stipulated that the sale price of the first trailer was $7,000.00. However, because neither party has briefed this issue and neither legal nor factual issues surrounding its applicability to this case have been adequately developed, the court finds summary judgment on this issue inappropriate at this time.

**C. Denial of Discharge for Withholding Information from the Trustee: § 727(a)(4)(D)**

Plaintiff's fourth issue is that the debtors "have made a false oath or false statement in their Section 341 meeting concerning the sale of the collateral, the person to whom the collateral was sold, [and] the amount of the sale proceeds" (Complaint 2), which would violate 11 U.S.C. 727(a)(4)(D): the court is not to grant a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." As with the Plaintiff's § 727(a)(3) claim, the obligation not to withhold the aforementioned items from officers of the case, including the Trustee, exists outside of the loan agreement and is therefore not affected by Plaintiff's release of claims under that agreement. The court finds that, as above, because neither party has briefed this issue and neither legal nor factual issues surrounding its applicability to this case have been adequately developed, summary judgment on this issue inappropriate at this time.

An order in accordance with this decision shall be entered contemporaneously.

/s/ Russ Kendig   OCT 1 9 2007
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List**:

Richland Trust Company
3 North Main Street
Mansfield, OH 44902

Eric S Miller
13 Park Ave W
#608
Mansfield, OH 44902

Ralph Edward Haley
Susan Cooper Haley
4289 CR 20
Mt Gilead, OH 43338

Deborah L Mack
P O Box 486
34 South Park Building
Mansfield, OH 44901

Donald M Miller
1400 Market Ave N
Canton, OH 44714-2608